# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-20270
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

November 16, 2018

Lyle W. Cayce
Clerk

JANE DOE,

       Plaintiff - Appellant

v.

HARRIS COUNTY, TEXAS; MELISSA MUNOZ; JAIME BURRO; SHERIFF
RON HICKMAN, In His Official Capacity,

       Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-3721

Before KING, SOUTHWICK, and ENGELHARDT, Circuit Judges.

PER CURIAM:[*]

This case arises from a series of events related to a rape prosecution in 2016. Appellant Jane Doe alleges that appellees violated her constitutional rights by keeping her in Harris County jail for 53 days past the expiration of her unrelated drug-possession sentence in order to obtain her testimony at the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-20270

criminal trial of her rapist. The district court granted appellees' motion to dismiss all of Doe's claims. We AFFIRM.

## I.

In 2003, Jane Doe was raped by an unknown attacker. In 2015, while she was serving a jail sentence for drug possession, prosecutors initiated criminal proceedings against Doe's alleged rapist, and Doe agreed to testify. In order to secure her testimony, prosecutors sought, and a state court issued, a bench warrant ordering her transfer to the Harris County jail. The warrant was addressed "TO THE DIRECTOR: Texas Department of Criminal Justice, Dayton, Texas or, TO THE SHERIFF: Liberty County, Dayton, Texas or TO: Any Peace Officer of the State of Texas." The warrant identified Jane Doe as a witness in the rape prosecution, represented that the case was "set on the court's docket for INSTANTER at 08:30 AM," and ordered its recipient to "deliver the above named individual to the custody of the Harris County Sheriff or any of his deputies."

Doe arrived at the Harris County jail on November 5, 2015. On December 9, 2015, nine days prior to the release date for her drug-possession conviction, the senior deputy to the Harris County sheriff emailed the court coordinator to inform her that Doe's release date was coming up and to ask whether Doe should be released. The court coordinator replied a few minutes later stating that "[a]s of now we still need her held on that case. If anything changes I will let you know." The judge issued a bench warrant return, allowing Doe to be released from jail, on February 9, 2016, 53 days after Doe's scheduled release date.

Doe sued Harris County, Sheriff Ron Hickman, Governor Greg Abbott, and Attorney General Ken Paxton, as well as Melissa Munoz and Jaime Burro, two assistant district attorneys in the Harris County District Attorney's office. In her complaint, she alleged violations of her rights under the Fourth,

No. 18-20270

Fourteenth and Sixth Amendments. The district court dismissed her claims as to all defendants. On appeal, she pursues only her claims under the Fourth and Fourteenth Amendments and has abandoned her claims against the Governor and Attorney General.

## II.

### A.

This court reviews a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) de novo. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). Although we accept all well-pleaded facts as true, the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading consisting of conclusory allegations, naked assertions without any factual enhancement, or formulaic recitations of a cause of action will not suffice under this standard. *See id.* at 678.

### B.

We first consider Doe's allegations against Burro and Munoz. The lower court found that these claims were barred by prosecutorial immunity. Assistant district attorneys like Burro and Munoz enjoy absolute immunity from § 1983 actions related to "initiating a prosecution and . . . presenting the State's case" as well as any activities "intimately associated with the judicial phase of the criminal process." *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-431 (1976)). Doe argues that prosecutorial immunity does not apply in this case because the allegedly unlawful actions taken by Burro and Munoz were administrative, not prosecutorial. To support this argument, Doe cites out-of-circuit cases in which courts declined to apply prosecutorial immunity when confronted with the detention of a witness.

No. 18-20270

This circuit has held (in an unpublished opinion) that detaining a witness in order to compel testimony at trial is prosecutorial and that any lawsuits arising out of a prosecutor's performance of this function are barred. *Harris v. Dallas Cty. Dist. Att'y's Office*, 196 F.3d 1256, 1999 WL 800003 (5th Cir. Sept. 14, 1999) (unpublished table decision). In *Harris*, we held that "efforts to secure the appearance of the state's trial witnesses in court are activities intimately associated with the judicial phase of the criminal process, and thus are entitled to absolute prosecutorial immunity." *Id.* at *1. This is so even where the prosecutor "acted inappropriately." *Id.* We find the reasoning of the *Harris* panel persuasive: the appearance of witnesses for trial is intimately associated with a prosecutor's advocacy. At times, the detention of witnesses is necessary to secure that appearance.

The out-of-circuit cases Doe cites are inapposite. Doe first cites a Second Circuit opinion, *Simon v. City of New York*, 727 F.3d 167 (2d Cir. 2013). In *Simon*, the panel found that "the *execution* of a material witness warrant is a police function, not a prosecutorial function," where the defendants acted contrary to a court order that required the plaintiff be brought "*before the court at 10:00 a.m. on August 11.*" *Id.* at 172-73. "[H]ad they complied with the terms of the warrant by bringing her promptly before the court, no liability could attach to their actions . . . ." *Id.* at 173. The court explained that because the defendants' "actions fell outside the protection of the warrant[,] they were not acting in the role of advocate in connection with a judicial proceeding." *Id.* The crux of prosecutorial immunity for the purposes of *Simon* was compliance with the court's order.

Here, Doe likens her case to *Simon* and contends that Burro and Munoz failed to comply with the bench warrant by failing to bring her before the court "INSTANTER," or immediately. This is incorrect. As discussed, the warrant stated that the case was *docketed* for "INSTANTER at 8:30 A.M.," but it does

4

not instruct its recipients to bring anyone before the court. Rather, the only order embodied in the warrant is to transfer Doe to Harris County jail. Moreover, even if the warrant did contain a command to bring Doe before the court, it is not addressed to Burro, Munoz, or the Harris County D.A.'s office. Accordingly, Burro and Munoz did not defy the bench warrant by allowing Doe's confinement to continue. *Simon* is therefore not applicable.

Doe also cites then-Chief Judge McKee's concurrence in *Schneyder v. Smith*, 653 F.3d 313 (3d Cir. 2011), as support for her contention that prosecutorial immunity does not apply in this case. Doe cites the following excerpt:

> The central inquiry before us is simple: would a reasonable prosecutor have known that detaining a material witness for 48 days after a trial has been continued may have been contrary to the wishes of the authorizing court, and that this additional detention violated the witness' constitutional rights? It takes neither a panel of federal judges nor a prescient prosecutor to know that the answer to both questions is a resounding "yes."

*Id.* at 335 (McKee, C.J., concurring) (citation omitted). The quoted passage is distinguishable on its face. As is clear from the excerpt above, it should have been apparent to the *Schneyder* defendants that their continuing detention of plaintiff was contrary to the court's wishes. Here, a court employee had specifically instructed the Deputy Sheriff to continue to detain Doe past her release date. The prosecutors therefore had reason to believe that *releasing* Doe would be contrary to the court's wishes.[1]

Considering the out-of-circuit cases Doe cites, as well as our unpublished opinion in *Harris*, we conclude that Burro and Munoz were entitled to

---

[1] We note that the panel opinion in *Schneyder* does raise the question as to whether the *sine qua non* of prosecutorial immunity in these circumstances is compliance with a court's order. *See id.* at 333. However, because Doe does not brief this issue, and because we are not bound by *Schneyder*, we need not consider it.

prosecutorial immunity in this case. As a result, Doe's claims against them are barred.

## C.

We next consider Doe's claims against Harris County.[2] In a § 1983 case such as this, a municipality cannot be held liable on a theory of respondeat superior. *Shumpert v. City of Tupelo*, ---F.3d---, 2018 WL 4561268, at *2 (5th Cir. Sept. 24, 2018) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). Instead, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). A plaintiff may satisfy this burden by alleging that the policy or custom itself violated the constitution or that the policy or custom was adopted "with 'deliberate indifference' as to its known or obvious consequences." *Id.* at 407.

Doe's brief devotes only one or two sentences to each of her substantive constitutional allegations. With little clarification, she alleges that Harris County: (1) subjected her to an unreasonable seizure in violation of the Fourth Amendment; (2) violated her rights secured by the Fourteenth Amendment's Equal Protection Clause; (3) violated her right to procedural due process under the Fourteenth Amendment by failing to give her a hearing, a bond, or an attorney; and (4) violated her substantive due process rights because "what happened to her 'shocks the judicial conscious [sic].'" In her discussion of *Monell*, Doe does not explain which specific constitutional violation was caused by Harris County's alleged policies or customs. Accordingly, we will analyze Doe's *Monell* argument in the abstract, doing our best to piece together what constitutional violation or violations may have been caused by an alleged policy or custom of Harris County.

---

[2] In her briefing on appeal, Doe refers to Harris County and Sheriff Ron Hickman (whom she sues in his official capacity) collectively as "Harris County."

Doe first alleges that Harris County "had a policy or custom of routinely receiving bench warrants and, just like this case, instead of bringing witnesses in front of the court that issued the warrant as ordered, they would instead bring them straight to Harris County Jail." The only support Doe offers for this allegation on appeal is that "this case shows this allegation is plausible as it is exactly what happened to Doe."

These allegations plainly fail under *Iqbal*. As discussed, threadbare allegations and recitations of the elements of a cause of action will not suffice to defeat a motion to dismiss. *See Iqbal*, 556 U.S. at 678. The simple allegation that a "policy or custom" existed, without reference to a specific policy or custom, is precisely the sort of formulaic pleading that does not pass muster under *Iqbal*. The only factual support offered for the conclusion that a policy or custom existed is that Doe herself was jailed. If this court were to treat this allegation as sufficient, it would collapse municipal liability under § 1983 into respondeat superior, which we plainly may not do.

Doe also alleges that Harris County failed to train or supervise its employees regarding their arrest and detention of witnesses. Doe contends that this failure to train predictably caused Doe's alleged constitutional violations and qualifies for single incident liability.

It is difficult to see how Harris County employees' training was inadequate, given their response to the situation. As discussed, the Deputy Sheriff contacted the court to see if it was appropriate to continue Doe's detention. In her reply brief, Doe points out that it was a court employee, and not the Judge, who issued the directive to keep Doe in jail. Doe argues that "non-elected bureaucrats" cannot make decisions properly left to elected judges and that it was therefore improper to follow these directions. However, the underlying constitutional question here is not whether the judge or a court employee should have made the decision as to whether Doe remained in prison;

it is what constitutional infirmity, if any, resulted from the Deputy Sheriff's reliance on the court employee's representations. Doe has not alleged any such violation, and we strain to find any. Therefore, Doe's failure-to-train and failure-to-supervise claims fail.

Doe finally alleges that former District Attorney Devon Anderson articulated county policy when she made statements related to the jailing of another rape victim who was a witness in the trial of her rapist and ratified the policy through statements made relating to Doe's case. These statements, whatever their import, cannot be attributed to Harris County. As we have previously held, *Monell* liability cannot be premised on the action of a District Attorney who is acting as an advocate for the state. *See Esteves*, 106 F.3d at 677. Whether an individual is acting on behalf of the state or the county "is determined by state law." *Id.* And under Texas law "when acting in the prosecutorial capacity to enforce state penal law, a district attorney is an agent of the state, not of the county in which the criminal case happens to be prosecuted." *Id.* at 678. Here, Anderson made these statements as part of a prosecution predicated on state law. Accordingly, they are not attributable to Harris County. Doe's claims against Harris County fail under *Monell*.

The judgment of the district court is therefore AFFIRMED.